Rel: July 2, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

## CL-2026-0319 and CL-2026-0321

_____

## Ex parte P.R.P.

## PETITIONS FOR WRIT OF MANDAMUS

## (In re: Matter of J.A.J.R.)

## (Marshall Juvenile Court: JU-19-739.01 and JU-19-739.03)

MOORE, Presiding Judge.

As recounted by this court in P.R.P. v. Marshall County Department of Human Resources, 419 So. 3d 1018 (Ala. Civ. App. 2024) ("P.R.P."), J.A.J.R. ("the child") was born in Guatemala in 2014 to F.M. ("the father") and P.R.P. ("the mother"). In early 2019, with the permission of the mother, the child illegally immigrated to the United

States with the father. In March 2019, the father and the child settled in Marshall County, while the mother remained in Guatemala. On July 18, 2019, the father was arrested and charged with a sexual offense against the child, and, without contacting the mother, the Marshall County Department of Human Resources ("DHR") took the child into protective custody and commenced dependency proceedings relating to the child in case number JU-19-739.01 ("the .01 action"). Id. The Marshall Juvenile Court adjudicated the child to be a dependent child, and DHR placed the child into foster care.

In June 2020, still without having contacted the mother, DHR filed a petition to terminate the parental rights of the mother and of the father; that petition was assigned case number JU-19-739.02. See P.R.P., supra. In December 2023, the juvenile court entered a judgment terminating the mother's parental rights, finding, among other things, that the mother had abandoned the child and that reunification was impossible or that DHR's reunification efforts had failed because of the distance between DHR and the mother and the language barrier. The mother appealed.

On appeal, this court determined that the juvenile court had acquired subject-matter jurisdiction over the child pursuant to Ala. Code

2

1975, § 30-3B-201(a)(2), a part of the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), Ala. Code 1975, § 30-3B-101 et seq. See P.R.P., 419 So. 3d at 1021 n.1. We also determined that the evidence did not support the juvenile court's finding that the mother had abandoned the child by allowing the child to immigrate to Alabama. Id. at 1025. We further concluded that, in the absence of abandonment, DHR had a duty to use reasonable efforts to reunite the child with the mother, regardless of any language or geographic barriers. Id. As we explained, that duty required DHR to use reasonable efforts to locate the mother, to identify any obstacles to reuniting the child with the mother, to notify the mother of those issues, to develop a plan tailored to overcome any reunification problems, to execute that plan, and to assess the success of that plan. Id. at 1025-30. We held that DHR had not used reasonable efforts to reunite the mother with the child. Id. at 1030.

First, we held that the evidence showed that DHR had not used reasonable efforts to locate the mother. 419 So. 3d at 1027. Eventually, the mother learned that the child was in DHR's custody and that the juvenile court had entered a judgment terminating her parental rights on July 12, 2021. The mother secured legal counsel and successfully

3

moved the juvenile court to set aside that judgment on January 19, 2022. Id. at 1021.

Second, we held that DHR had failed to provide the mother with an opportunity to address its concerns relating to her relationship with the father. DHR finally met with the mother for the first time on July 6, 2022, to formulate an individualized-service plan ("ISP") to reunite the mother with the child. Id. at 1028. DHR did not present any evidence of the barriers to family reunification it had identified, but the evidence showed that the mother had met all the goals set for her in the ISP. Id. At trial, however, DHR social workers testified regarding their concern that the mother had not separated from the father, and, based on that evidence, the juvenile court determined that the mother lacked appropriate protective capacity to safeguard the child from the father. Id. at 1028-29. However, this court determined that the mother had not been informed of that concern by DHR and that she had not been given a fair opportunity to rectify that barrier to reunification. The court said:

> "Before trial, DHR never identified the mother's alleged continuing relationship with the father as an impediment to her reunification with the child, nor did it establish any means by which the mother could strengthen her protective capacity, assure that the father would be restrained from the child, or verify his absence from the family home."

4

419 So. 3d at 1029. We concluded that DHR had not followed the framework established in H.H. v. Baldwin County Department of Human Resources, 989 So. 2d 1094, 1105 (Ala. Civ. App. 2007) (plurality opinion), to make a fair and serious attempt to rehabilitate the mother and to reunite her with the child. Therefore, we reversed the judgment, and we "remand[ed] the case for further proceedings consistent with this opinion." 419 So. 3d at 1030 (emphasis added).

In our opinion, we noted that DHR had established a concurrent permanency plan for the child of either return to the mother or termination of her parental rights with subsequent adoption by the child's foster parents. 419 So. 3d at 1028. DHR had already worked toward adoption. It was this court's intention that, on remand, DHR would formulate a proper ISP designed to achieve the concurrent permanency plan of reuniting the mother with the child by identifying any and all circumstances it considered to be impeding the reunification of the mother and the child, communicating those concerns to the mother, developing a reasonable plan with the mother tailored toward alleviating the identified problems as quickly and as safely as possible, and assessing the success of that plan. We contemplated that the juvenile court would

5

conduct periodic permanency hearings to determine the appropriate permanency plan for the child, as required by Ala. Code 1975, § 12-15-315, and that it would enter appropriate orders determining whether DHR had used reasonable efforts to finalize the permanency plan for the child, as required by Ala. Code 1975, § 12-15-312(a)(3) and § 12-15-315(c)(3). Finally, we remanded the case for the juvenile court to conduct proceedings to ultimately decide the proper disposition of the child, i.e., whether reasonable family-reunification efforts had succeeded so that the child could be safely returned to the custody of the mother, whether those efforts had failed so that the concurrent permanency plan of termination of parental rights with adoption by the foster parents should be finalized, or whether some other final disposition would serve the best interests of the child.

On remand, the juvenile-court clerk assigned a new case number -- JU-19-739.03 ("the .03 action") -- for the further proceedings ordered by this court.[1] Beginning on March 6, 2025, the mother filed several motions

---

[1]In April 2025, the mother filed a petition for the writ of mandamus requesting that this court direct the juvenile court to dismiss the .03 action for lack of UCCJEA jurisdiction. This court determined that our holding in P.R.P. that the juvenile court had UCCJEA jurisdiction was

in the .03 action to facilitate her reunification with the child in compliance with our remand instructions, as she understood them. In those motions, the mother claimed that DHR was not using reasonable efforts to reunite the child with her and that it had unilaterally, and not collaboratively, developed an ISP for her that was designed to obstruct family reunification. DHR responded to those motions by insisting that it was following proper ISP protocol in formulating a plan tailored toward ameliorating the obstacles to reunification that it had identified. On January 14, 2026, the juvenile court held a hearing to discuss the status of the case, and, at that hearing, it stated that a "dispositional" hearing should be held to determine whether DHR had used reasonable efforts to finalize the concurrent permanency plan, whether the mother had cooperated with those efforts, whether the efforts had failed or succeeded, and whether the child should be returned to the custody of the mother or another petition to terminate parental rights should be filed. On January 15, 2026, the juvenile court entered an order in the .03 action

---

the law of the case, and we denied the petition. Ex parte P.R.P. (No. CL-2025-0293, June 6, 2025).

scheduling the hearing for March 11, 2026,[2] which it later rescheduled to April 29, 2026.

On April 22, 2026, the juvenile court entered an administrative order transferring all motions and orders entered in the .03 action to the .01 action. On April 24, 2026, the juvenile court entered an order in the .01 action providing that, on April 29, 2026, it would be conducting both a permanency hearing and a dispositional hearing in the .01 action. On April 27, 2026, the mother filed two identical petitions for the writ of mandamus with this court, one referencing the .01 action and the other referencing the .03 action.

In her petitions, the mother primarily argues that the juvenile court has been violating the mandate of this court from P.R.P. Seeking mandamus relief is a proper method to test whether a trial court has properly interpreted and applied an appellate opinion. Ex parte

---

[2]On the same date, the juvenile court entered an order denying the mother the right to attend hearings remotely via the Zoom videoconferencing application. The mother petitioned this court for the writ of mandamus, and we granted the petition, directing the juvenile court to reconsider its order. See Ex parte P.R.P., [Ms. CL-2026-0223, Apr. 24, 2026] ___ So. 3d ___ (Ala. Civ. App. 2026). Upon reconsideration, the juvenile court entered an order allowing the mother to attend hearings remotely.

Edwards, 727 So. 2d 792, 794 (Ala. 1998). A trial court must comply strictly with an appellate mandate, but, when the appellate court gives no precise directions as to how a matter must proceed on remand, the trial court may proceed in any manner that is not inconsistent with the appellate court's opinion. See J.B. v. J.R., 426 So. 3d 1222, 1227-28 (Ala. Civ. App. 2025). The writ of mandamus will be issued only when it is shown that the lower court has acted in a manner inconsistent with the appellate court's mandate. See, e.g., Ex parte United States Fid. & Guar. Co., 585 So. 2d 922, 924 (Ala. 1991).

The mother argues that the juvenile court has not complied with our mandate because, she says, it has failed to order DHR to reunite the child with her. However, this court did not order the juvenile court to conduct further proceedings to ensure that the child was promptly returned to the mother's custody, as she contends. We ordered only that the juvenile court conduct further proceedings to ensure that DHR was making reasonable efforts toward finalizing the concurrent permanency plan and that the juvenile court conduct further proceedings to evaluate the success of those efforts before disposing of the permanent custody of the child. In the months between March 2025 and January 2026, the

9

mother filed several motions asserting that the ISP developed by DHR was not reasonably formulated to achieve the permanency goal of returning the child to the mother, and she advanced her own alternative reunification plan to facilitate that goal. On January 14, 2026, after hearing oral argument, the juvenile court concluded that it needed to conduct an evidentiary hearing before ruling on the motions so that it could determine the reasonableness and success of DHR's efforts, and it scheduled a hearing for that purpose, as well as for the purpose of determining the final permanency plan for the child. Although the juvenile court could have scheduled the hearing sooner, we do not perceive that the juvenile court has acted in a manner inconsistent with our mandate.[3]

We also do not agree that the juvenile court has violated our mandate by maintaining the .01 action. The mother contends that, in

---

[3]We do not express any opinion on the merits of the ISP developed by DHR, or the propriety of the manner in which the ISP was formulated, which issues remain subject to discretionary review by the juvenile court at this time. A writ of mandamus may compel the exercise of discretion, but it will not direct the manner in which discretion must be exercised when the requested act depends on the ascertainment of facts or the exercise of judgment. See Ex parte Moulton, 116 So. 3d 1119, 1131 (Ala. 2013).

P.R.P., we determined that the child was no longer dependent because she had not abandoned the child. However, this court did not review, much less reverse, the dependency judgment that had been entered in the .01 action. Our determination that the mother had not abandoned the child did not mean that we determined that the child was no longer dependent. Dependency, within the meaning of Ala. Code 1975, § 12-15-102(8), is not even an issue in a termination-of-parental-rights proceeding. See M.G.S. v. Lee Cnty. Dep't of Hum. Res., 403 So. 3d 166, 181 (Ala. Civ. App. 2024). We determined in P.R.P. only that the mother had not abandoned the child, so DHR had to exhaust reasonable efforts toward reuniting her with the child before the juvenile court could consider terminating her parental rights. We did not find that the child was no longer dependent as to the mother so that she would have a right to his custody. The dependency determination made in the .01 action remains intact. The juvenile court intends to hold a permanency hearing and a dispositional hearing in the .01 action only to adjudicate the

11

outstanding issues affecting the permanency and final custodial disposition of the child, in accordance with our mandate.[4]

In Ex parte C.B.S., [Ms. CL-2025-0653, Sept. 26, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025), this court restated the standard governing mandamus review:

> "'This Court has consistently held that the writ of mandamus is an extraordinary and drastic writ and that a party seeking such a writ must meet certain criteria. We will issue the writ of mandamus only when (1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked. Ex parte Mercury Fin. Corp., 715 So. 2d 196, 198 (Ala. 1997). Because mandamus is an extraordinary remedy, the standard by which this Court reviews a petition for the writ of mandamus is to determine whether the trial court has clearly abused its discretion. See Ex parte Rudolph, 515 So. 2d 704, 706 (Ala. 1987).'
>
> "Ex parte Flint Constr. Co., 775 So. 2d 805, 808 (Ala. 2000)."

---

[4]We do not consider any other arguments objecting to the order scheduling a dispositional hearing. The juvenile court originally entered an order on January 15, 2026, setting the case for a dispositional hearing. The mother had 14 days to file a petition for the writ of mandamus directed toward that order. See Rule 21(a)(3), Ala. R. App. P. The orders continuing the hearing to a later date did not revive her time to file a petition or present good cause for filing an untimely petition. See Ex parte Cassimus, 426 So. 3d 403 (Ala. 2025).

We conclude that the mother has not met that exacting standard to warrant extraordinary mandamus relief in this case. For the aforementioned reasons, we deny the petitions.

CL-2026-0319 -- PETITION DENIED.

CL-2026-0321 -- PETITION DENIED.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.